IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS E. OWENS and )
DONNA OWENS, )
 )
    Plaintiffs, )
              v. )   Civil No. 18-1421
 )
JP MORGAN CHASE BANK and )
RUSHMORE LOAN MANAGEMENT )
SERVICES, LLC, )
 )
    Defendants. )

**OPINION and ORDER**

Plaintiffs Thomas E. Owens and Donna Owens bring this action against Defendant JP Morgan Chase Bank ("JP Morgan") and Rushmore Loan Management Services, LLC ("Rushmore"), alleging violations related to the servicing of Plaintiffs' mortgage. Plaintiffs' Complaint alleges claims under the Fair Debt Collections Act, Breach of Contract, and the Pennsylvania Loan Interest and Protection Act. Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted. ECF No. 2. For the reasons that follow, Defendants' Motion to Dismiss is denied in part, and granted in part, without prejudice.

**I.   BACKGROUND**

Plaintiffs Thomas E. Owens and Donna Owens are the owners of a personal residence, located at 601 6th Street, Trafford, Westmoreland County, Pennsylvania. Compl. ¶ 3. Plaintiffs obtained a mortgage from One Stop Mortgage in 1996. Compl. ¶¶ 4, 12, 27 (One Stop Mortgage documents, Oct. 29, 1996, Ex. C (ECF No. 1-3, at 25-68)). Defendant, JP Morgan, is the present owner of Plaintiffs' note and mortgage. Compl. ¶¶ 4, 12. Defendant, Rushmore, is the current

mortgage loan servicer, having received the loan servicing obligations from Residential Credit Solutions, Inc. ("Residential Credit Solutions"), in late 2015. Compl. ¶¶ 23, 38.

Plaintiffs initially filed a complaint in the Court of Common Pleas of Westmoreland County, Pennsylvania on October 11, 2018, at Docket No. 4625 of 2018. ECF No. 1-3. Defendants timely removed the case to this court on October 23, 2018, pursuant to 28 U.S.C. § 1331. Federal jurisdiction is based upon Plaintiffs' claim that Rushmore has violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. ECF No. 1. Plaintiffs also allege breach of contract and violations of the Pennsylvania Loan Interest and Protection Act, 41 Pa. Cons. Stat. §§ 101-605 (commonly known as and referred to herein as "Act 6").

### A. Prior Lawsuits

Plaintiffs have filed four lawsuits, germane to their claims filed against Defendants in the instant lawsuit, all arising out of Plaintiffs' 1996 residential mortgage. These suits were filed as follows:

- 2012 <u>Owens v. J Morgan Chase Bank and Residential Credit Solutions, Inc.</u>, Civil No. 12-1081, Western District of Pennsylvania;

- 2014 <u>Owens v. Residential Credit Solutions, Inc.</u>, Civil No. 14-1148, Western District of Pennsylvania;

- 2015 <u>Owens v. Residential Credit Solutions, Inc.</u>, No. 2015-2467, Court of Common Pleas of Westmoreland County; and

- 2018 <u>Owens v. JP Morgan Chase Bank and Rushmore Loan Management Services, LLC</u>, No. 2018-4625, Court of Common Pleas of Westmoreland County, *removed* to Western District of Pennsylvania, and filed at Civil No. 18-1421 (present case).

The three prior lawsuits are matters of public record, thus the Court may take judicial notice of them. All four lawsuits are factually and chronologically related to each other. First, in the

instant Complaint, Plaintiffs allege that their present claims have their genesis in Plaintiffs' 2012 federal lawsuit. Compl. ¶¶ 14-19. Next, the 2014 federal lawsuit, filed only against Residential Credit Solutions, was dismissed after the Court (i) found that Residential Credit Solutions was not a debt collector subject to the FDCPA, (ii) determined that Residential Credit Solutions had complied with the applicable reporting requirements, and (iii) declined to exercise supplemental jurisdiction over the remaining state law claims. Owens, Civ. No. 14-1148, Mem. Order, Apr. 14, 2015, ECF No. 17. Thereafter, in 2015, Plaintiffs filed their unresolved state law claims in their Complaint against Residential Credit Solutions in Westmoreland County, Pennsylvania. 2015 Westmoreland County Compl., No. 2465 of 2015 (ECF No. 2-5). Plaintiffs therein sued Residential Credit Solutions for breach of the September 13, 2013 Settlement Agreement, which resolved Plaintiffs' 2012 lawsuit. 2015 Westmoreland County Compl. ¶¶ 7-12, 22, 39-41.

In all of their lawsuits, Plaintiffs assert repeating claims that Defendants have been representing that Plaintiffs are in arrears in their mortgage and escrow payments.[1] In their 2014, 2015, and 2018 lawsuits, Plaintiffs also set forth nearly identical allegations regarding their

---

[1] In their 2012 federal Amended Complaint, Plaintiffs' alleged that JP Morgan and Residential Credit Solutions had, "alleged the Plaintiffs were making insufficient mortgage payments, as the monthly payment did not account for an 'escrow shortage." 2012 Am. Compl. ¶ 25, Civ No. 12-1081. In Plaintiffs' 2014 federal Complaint, Plaintiffs alleged that Residential Credit Solutions, "alleged the Plaintiffs were making insufficient mortgage payments, as the monthly payment did not account for an 'escrow shortage' which included unpaid late charges, outstanding advances/fees, and $2,762.67." 2014 Compl. ¶ 17, Civ. No. 14-1148. Plaintiffs also attach their "monthly [mortgage] statement for June 2014," as an exhibit to their 2014 federal Complaint. Id. In the 2015 Westmoreland County Complaint, Plaintiffs allege that, "the Defendant alleged the Plaintiffs were making insufficient mortgage payments, as the monthly payment did not account for an 'escrow shortage' which included unpaid late charges of $655.56, outstanding advances/fees of $6,819.56, and $2,762.67 in past due payments." Westmoreland County Compl. ¶ 14. Plaintiffs again support this allegation with "the monthly [mortgage] statement for June 2014." Id. Finally, in the instant Complaint, Plaintiffs allege that "the Defendant alleged the Plaintiffs were making insufficient mortgage payments, as the monthly payment did not account for an 'escrow shortage' which included unpaid late charges, outstanding advances/fees, and $2,762.67." Compl. ¶ 21. Plaintiffs support this allegation by attaching "the monthly [mortgage] statement for June 2014," as an exhibit. Id.

monthly mortgage payments[2], and regarding Defendants improper legal fee charges[3]. In the 2012 federal lawsuit, defendant Residential Credit Solutions, was dismissed because the court found that Residential Credit Solutions was not a debt collector capable of being sued under Plaintiffs' claim. Also, Plaintiffs resolved its 2012 claims against JP Morgan by Settlement Agreement. In the 2014 federal lawsuit, defendant Residential Credit Solutions, was dismissed, based on the 2012 court ruling. The 2015 Westmoreland County lawsuit remains pending.[4]

### B.  Breach of Contract Claim

In Count 1, Plaintiffs sue JP Morgan for breach of contract. Compl. ¶¶ 48-53. Plaintiffs allege that the instant Complaint is grounded in Plaintiffs' 2012 federal lawsuit in this Court, docketed at Civil Action No. 12-81. Compl. ¶ 13. In that lawsuit, Plaintiffs alleged, among other things, that JP Morgan had not properly serviced Plaintiffs' mortgage obligation. Compl. ¶ 15. Plaintiffs alleged that they had completed a Chapter 13 Bankruptcy, which had cured their

---

[2] In Plaintiffs' 2014 federal Complaint, Plaintiffs alleged they "continued to make their monthly mortgage payments per the [settlement] agreement and to this date [August 26, 2014] the Plaintiffs have not been late on a payment, nor have the Plaintiffs missed a payment." 2014 Compl. ¶ 16. In Plaintiffs' 2015 Westmoreland County Complaint, Plaintiffs allege that they "continued to make their monthly mortgage payments per the [settlement] agreement and to this date [May 21, 2015] the Plaintiffs have not been late on a payment, nor have the Plaintiffs missed a payment." 2015 Westmoreland County Compl. ¶ 16. In the instant Complaint, Plaintiffs allege they "continued to make their monthly mortgage payments per the [settlement] agreement and to this date [October 11, 2018] the Plaintiffs have not been late on a payment, nor have the Plaintiffs missed a payment." Compl. ¶ 20.

[3] In the 2014 federal Complaint, Plaintiffs alleged that Defendant engaged in "the improper charging of legal fees" incurred by JP Morgan Chase Bank "in litigating the prior lawsuit." 2014 Compl. ¶¶ 29, 45. In the 2015 Westmoreland County Complaint, Plaintiffs alleged that "[r]ecently the Plaintiffs learned that [Residential Credit Solutions] charged them attorney's fees from [] at least one if not two prior lawsuits." 2015 Westmoreland County Compl. ¶ 32. In support of this allegation Plaintiffs attached a "copy of the May 2015 [mortgage] statement." Id. In the 2018 lawsuit, Plaintiffs allege that "[r]ecently the Plaintiffs learned that [Residential Credit Solutions] charged them attorney's fees from [] at least one if not two prior lawsuits." Compl. ¶ 28. In support of this allegation Plaintiffs attached a "copy of the April 2015 [mortgage] statement." Id.

[4] Although Plaintiffs argue that references to their 2012, 2014, and 2015 cases should be stricken from Defendants' motion to dismiss, because all four lawsuits are based on the same essential facts and claims, they are relevant. Plaintiffs' request to strike reference to the prior lawsuits is denied.

4

pre-bankruptcy mortgage arrearage. Compl. ¶ 16. Despite the cure, JP Morgan considered Plaintiffs' mortgage to be in arrears. Compl. ¶ 17. Plaintiffs and JP Morgan resolved the 2012 lawsuit through a Settlement Agreement, dated September 13, 2013. Compl. ¶ 18 (Settlement Agreement, Sept. 13, 2013, Ex. A to Compl. (ECF No. 1-3, at 16-23)). Pursuant to the Settlement Agreement, JP Morgan "reset the mortgage princip[al] and payment to August 1, 2013," and thereafter, Plaintiffs allege they timely made every monthly payment. Compl. ¶¶ 19-20; Settlement Agr. ¶ 1.c.

In their present Complaint, Plaintiffs allege that their May 6, 2014 mortgage statement represented that the Plaintiffs were making insufficient mortgage payments, because the monthly payment amount did not sufficiently fund an escrow shortage. The escrow shortage included unpaid late charges, outstanding advance/fees, and $2,762.67. Compl. ¶ 21; May 6, 2014 Mortgage Statement, Ex. B (ECF No 1-3, at 24). Said Mortgage Statement reflects the following items:

- a negative Escrow Balance of ($2,316.27);
- Unapplied Funds Balance of $795.03;
- Past Due Payments of $2,762.67;
- Unpaid Late Charges of $655.56;
- A Regular Monthly Payment of $920.89;
- Property Inspection Fee of $11.50; and
- Funds Received of $711.64.

ECF No. 1-3, at 24. Plaintiffs allege that they "could not understand why their escrow balance went from a surplus of over $5,000 to a deficit of $3,000 in a year." Compl. ¶ 22. Plaintiffs allege they continued to submit timely monthly mortgage payments, but the loan servicers, Residential Credit Solutions, and thereafter Rushmore, refused the payments. Compl. ¶ 23. As a result of the loan servicer's refusal of Plaintiffs' payments, the principal balance of the

mortgage obligation has increased beyond the initial loan amount. Compl. ¶ 24. Plaintiffs claim that JP Morgan breached the Settlement Agreement, because of the additional, unauthorized charges without notice. Compl. ¶ 49. In its motion to dismiss, JP Morgan argues that Plaintiffs' breach of contract claim is barred by the four-year applicable statute of limitations.

### B. Violations of Act 6

In Count 2, Plaintiffs allege that JP Morgan violated Act 6, 41 Pa. Cons. Stat. §§ 101-605, by charging, collecting, or attempting to collect, attorneys' fees, and interest in excess of the allowable amount. Compl. ¶¶ 54-59. Plaintiff's assert two distinct Act 6 violations: a "usury claim," arguing that JP Morgan collected and charged a usurious interest rate on the mortgage, and an "unlawful attorney's fees claim," arguing that JP Morgan collected or attempted to collect unlawful attorney's fees.

#### 1. Act 6 Usury Claim

Plaintiffs first allege that their relevant initial, October, 1996, principal mortgage loan was $48,751. Because their residential mortgage was below $50,000, the then-applicable Act 6 statute provided for a maximum lawful rate of interest at 9.5%. Compl. ¶¶ 26 & 27 (citing Pennsylvania Bulletin, Sept. 28, 1996, Ex. D, ECF no. 1-3, at 69). Plaintiffs allege that their mortgage interest rate of 9.95% exceeded the lawful rate. Compl. ¶ 27 (citing October 29, 1996 original mortgage documents, Ex. D, ECF No. 1-3, at p. 26; and see also Ex. B, ECF No. 1-3, at p. 24). In its motion to dismiss, JP Morgan argues that Plaintiffs' Act 6 usury claim is preempted by the National Bank Act.

## 2. Act 6 Unlawful Fees Claim

Plaintiffs allege that they learned that Residential Credit Solutions had charged Plaintiffs undisclosed, excessive, and retaliatory attorney's fees "from at least one if not two prior lawsuits," in violation of the Settlement Agreement and Act 6. Compl. ¶¶ 28-32. Plaintiffs also allege that Residential Credit Solutions charged unwarranted late fees and inspection costs of $1,164, even though Plaintiffs "are not behind on their obligation or if they are behind such arrear[age] is the sole result of the Defendant refusing to take their payments." Compl. ¶ 33. Plaintiffs allege that Rushmore and JP Morgan continue to impose the unwarranted charges. Compl. ¶ 34. Plaintiffs allege that the unwarranted and illegal charges derive from attorney's fees, excessive and usurious interest, illegal late fees and inspection costs, and an illegal and unknown lump sum charge imposed after JP Morgan "repaired the servicing of the Plaintiffs' obligation." Compl. ¶ 35.[5] In its motion to dismiss, JP Morgan argues that the Act 6 unlawful attorney's fees claim must be dismissed, because said claim is barred by the four-year statute of limitations of 41 Pa. Cons. Stat. § 502.

## 3. Violations of the FDCPA

In Count 3, Plaintiffs allege that Rushmore violated the FDCPA, by falsely representing the character and amount of the debt in the following ways:

(i) by incorporating "the disputed tax/insurance payment," in its notices concerning the debt;

(ii) by charging a usurious interest rate;

---

[5] Despite Plaintiffs' reference to other unlawful charges, Plaintiffs only assert Act 6 violations specifically based on alleged excessive attorney's fees and an alleged excessive interest rate. Compl. ¶ 57.

> (iii) by incorporating "attorney's fees which are not chargeable or collectable," under Act 6 or pursuant to the terms of the mortgage;
>
> (iv) by creating the implication that attorney's fees "related to the prior lawsuit were payable by the Plaintiffs" when under the terms of Settlement Agreement such fees were not collectible; and
>
> (iv) by imposing charges for "showing up at Plaintiffs' residence to see if they continued to reside at their residence."

Compl. ¶¶ 60-61a., 62. Plaintiffs allege that Rushmore began to harass Plaintiffs by "repeatedly and criminally trespassing on the Plaintiff's porch to place a post card/door hanger," even though Rushmore knew Plaintiffs were represented by counsel. Compl. ¶¶ 38-43. As such, Plaintiffs allege that Rushmore violated the FDCPA by criminally trespassing on Plaintiffs' property to hang the door hangers, and by communicating with plaintiffs through the use of a post card or door hanger. Compl. ¶¶ 61b-61c. In regard to when Rushmore engaged in this alleged unlawful conduct, Plaintiffs allege only that "the last post card placed on the Plaintiffs' door occurred in July 2018." Compl. ¶ 44. Plaintiffs do not provide dates as to when any of the other alleged conduct occurred, although, based on the timing of the transfer of the mortgage loan servicing to Rushmore, Rushmore's alleged conduct could not have occurred until sometime in 2015. Compl. ¶ 38. In its motion to dismiss, Rushmore argues that Plaintiffs' FDCPA claims, insofar as they are premised upon alleged conduct occurring outside the applicable one-year limitations period of 15 U.S.C. § 1692k(d), are barred.

## II. STANDARD OF REVIEW

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see also Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir.2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)); see also Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the

plaintiff, and then draw all reasonable inferences from them.") (citing <u>Foglia v. Renal Ventures Mgmt., LLC</u>, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. <u>Maio v. Aetna</u>, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." <u>Neitzke v. Williams</u>, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." <u>Phillips</u>, 515 F.3d at 236 (citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir.2002)).

## III. DISCUSSION

### A. Breach of Contract Claim

As regards Plaintiffs' breach of contract claim against JP Morgan, Count 1, Plaintiffs concede that their breach of contract claim is outside the statute of limitations, and is subject to dismissal. Therefore, JP Morgan's motion to dismiss Count 1 is granted, and said Count 1 is dismissed.

**B.     Act 6 Claims**

   **1.     Usury Claim**

In response to Plaintiffs' claim, that JP Morgan unlawfully charged and collected interest in excess of the amount permitted under Act 6, JP Morgan moves to dismiss said claim because it is preempted by the National Bank Act, 12 U.S.C. § 1, *et seq*. "In <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), the Supreme Court definitively held that §§ 85 and 86 of the [National Bank Act] completely preempt state law usury claims against national banks." <u>In re Cmty. Bank of N. Virginia</u>, 418 F.3d 277, 294–95 (3d Cir. 2005). The Supreme Court explained that, "[b]ecause §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank." <u>Beneficial Nat. Bank</u>, 539 U.S. at 11.

Plaintiffs concede that JP Morgan Chase Bank is a national bank, and Plaintiffs acknowledge that an Act 6 usury claim would be preempted, had their mortgage loan originated with a national bank. Plaintiffs argue that their loan originated from a non-national bank entity, thus preemption does not apply. Plaintiffs' mortgage was originated by One Stop Mortgage, a non-national bank. Compl. ¶ 27, and Ex. C to Compl., One Stop Mortgage closing and related documents, Oct. 29, 1996 (ECF No. 1-3, at 25-68). Plaintiffs argue that, although JP Morgan Chase Bank is a national bank, its purchase of their mortgage, which was originally subject to Act 6, did not "wash" the mortgage of Act 6 protection. Therefore, Plaintiffs argue that their mortgage is not preempted by the National Bank Act, and Plaintiffs' Act 6 usury claim survives.

The Court's review of the relevant case law demonstrates that when determining preemption issues, courts should look to the loan's origination. Where the loans originate from a

non-national bank entity, federal preemption does not apply.[6] Insofar as federal preemption under the National Banking Act does not apply to loans originated by a non-national bank, presently, where Plaintiffs' mortgage originated with One Stop Mortgage, a non-national bank, even though the present assignee, JP Morgan, is a national bank, federal preemption does not apply. As such, Plaintiffs' state law Act 6 usury claim is not preempted. Defendants' motion to dismiss this claim, based upon preemption, is denied.

### 2.    Unlawful Fee Charges

In addition to Plaintiffs' Act 6 usury claim, Plaintiffs allege that JP Morgan violated Act 6 by collecting, or attempting to collect excessive attorney's fees. Compl. ¶ 57.a. In its motion to dismiss this claim, JP Morgan argues that the attorney fees at issue accrued and Plaintiffs were aware of said fees more than four years before they filed this lawsuit. As such, JP Morgan argues that Plaintiffs' claim is barred by Pennsylvania's four-year statute of limitations. 41 Pa. Cons. Stat. § 502. As regards Plaintiffs knowledge of the fees, in their August 26, 2014 federal Complaint, Plaintiffs alleged that JP Morgan had engaged in "the improper charging of legal fees." 2014 Compl. ¶¶ 29, 45. Thus, Plaintiffs were aware of said alleged unlawful fees since August 26, 2014, which was more than four years before Plaintiffs filed their present case.

---

[6] See Decohen v. Capital One, N.A., 703 F.3d 216, 227 (4th Cir. 2012) (state law claim not preempted by federal law where loan originator was not a national bank). Id. at 227; Epps v. JP Morgan Chase Bank, 675 F.3d 315 (4th Cir.2012) (same); Thomas v. U.S. Bank Nat. Ass'n ND, 575 F.3d 794, 800 (8th Cir. 2009) (no preemption where the defendants, national banks, did not originate the loan, but were assignees who subsequently purchased the loans from a non-national bank loan originator); Aguayo v. U.S. Bank, 653 F.3d 912, 919 (9th Cir. 2011) (preemption does not apply to loan, originated by a non-national bank car dealership, that was subsequently assigned to a national bank); In re Ocwen Loan Servicing, 491 F.3d 638 (7th Cir. 2007) (preemption applied where originating institution, at the time of loan origination, was a national bank); In re Community Bank of Northern Virginia, 418 F.3d 277, 297 (3d Cir. 2005) (preemption did not apply where loans were in fact originated by a non-national depository institution, which was not a national bank); Krispin v. May Dep't Stores Co., 218 F.3d 919, 924 (8th Cir. 2000) (preemption determined based upon status of entity originating the debt rather than status of subsequent holder of debt).

However, an Act 6 claim for excessive fees accrues upon payment of said fee; it does not accrue upon charge of the fee or upon obligor's knowledge of the fee.[7] 41 Pa. Stat. Ann. § 502; Brown v. Second Nat. Bank of Erie, 72 Pa. 209, 214 (1872). Section 502 of Act 6, specifically provides that an Act 6 claim must be "commenced within four years from and after the time" that plaintiff has made payments in excess of the allowable amounts (or paid interest in excess of the allowable amount). 41 Pa. Stat. Ann. § 502. Therefore, JP Morgan's motion to dismiss, based upon the passage of four years from when the fee was charged or from when Plaintiffs knew of the alleged excessive fees, is denied.

### 3. Sufficiency of the Act 6 Claims

As regards the sufficiency of Plaintiffs' Act 6 claims, Plaintiffs must allege that they have in fact *paid* the alleged usurious interest and in fact *paid* the alleged unlawful attorney's fees. Glover v. Udren, No. CIV. 08-990, 2013 WL 6237990, at *20 (W.D. Pa. Dec. 3, 2013). "By its terms, § 502 only provides a remedy to '[a] person who ... *has paid* charges prohibited or in excess of those allowed by this act or otherwise by law . . . .' Salvati v. Deutsche Bank Nat. Tr. Co., 575 F. App'x 49, 54 (3d Cir. 2014) (quoting 41 Pa. Stat. Ann. § 502; emphasis in original). A demand by the lender for unlawful excessive interest "alone is not sufficient to confer a private cause of action [under section 502] if interest in excess of the statutory maximum was never collected." Waye v. First Citizen's Nat. Bank, 846 F. Supp. 310, 319 (M.D. Pa. 1994).

---

[7] Because the statute specifically directs that payment is the triggering event, Plaintiffs argument that the statute of limitations does not begin to run until the final alleged unlawful charges are assessed by JP Morgan, is similarly without merit. Pltfs. Br. Opp. 6. Again, the limitations period for an Act 6 claim is calculated, as acknowledged by Plaintiffs, from the time of payment of alleged unlawful charges, and not from the time of imposition of charges by a defendant. Id.

Plaintiffs have not adequately alleged that they have made the requisite unlawful payments of usurious interest or unlawful attorney's fees in order to state a valid Act 6 claim. Plaintiffs allegations and exhibits show that they were allegedly billed for alleged unlawful charges, and that they were charged an alleged unlawful interest rate above the allowable amount; however, Plaintiffs do not plead facts as to when or what charges were collected by Defendants. To the contrary, Plaintiffs have alleged that, at least as of mid-2014, Defendants refused to accept Plaintiffs' payments. Compl. ¶¶ 23, 24. Thus, while Plaintiffs generally allege that they have made payments that contained additional and excessive interest payments, they also plead that JP Morgan has refused the same since 2014. Therefore, because Plaintiffs have failed to allege that they have actually paid unlawful charges within the four-year limitations period, they have failed to state an Act 6 claim. The Act 6 claims, Count 2, are dismissed, without prejudice. Plaintiffs will be given an opportunity to amend their Complaint to plead facts to set forth that they have actually paid and JP Morgan has collected the requisite payments from on, or after, October 11, 2014, within the four-year period before the October 11, 2018 filing of the instant Complaint. 41 Pa. Stat. Ann. § 502.

### C. FDCPA Claims

Finally, Rushmore argues that Plaintiffs' FDCPA claims are barred to the extent that any claim is based on alleged conduct that occurred outside the one-year statute of limitations period of 15 U.S.C. § 1692k(d). Section 1692k(d) provides that an action to enforce the FDCPA may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiffs allege a variety of conduct by Rushmore that allegedly violates the FDCPA. See Compl. ¶¶ 38-43;60-61. Only one of these alleged violations occurred within one year before

Plaintiffs filed their October 11, 2018 Complaint. Specifically, Plaintiffs allege that in July 2018, an unlawful post card was placed on Plaintiffs' door. Compl. ¶ 44. Therefore, this conduct is not barred by the FDCPA one-year statute of limitations. Rushmore's motion to dismiss Plaintiffs' FDCPA claim, in relation to the July, 2018, incident, is denied. Rushmore's motion to dismiss Plaintiffs' FDCPA claims, for alleged conduct occurring before October 11, 2017, is granted, without prejudice.

## IV. CONCLUSION

Accordingly, based upon the foregoing discussion, Defendants' Motion to Dismiss (ECF No. 2) is DENIED in part, and GRANTED in part, as follows:

1. The Motion to Dismiss is GRANTED as to Plaintiffs' Breach of Contract Claim asserted in Count 1. Count 1 is hereby DISMISSED, with prejudice.

2. The Motion to Dismiss is DENIED as to Defendants' argument that Plaintiffs' Act 6 Usury Claim asserted in Count 2 is preempted by the National Bank Act. The Motion to Dismiss is DENIED as to Defendants' argument that Plaintiffs' Act 6 Unlawful Attorneys' Fees Claim asserted in Count 2 is barred by the statute of limitations. Plaintiffs' Act 6 Claims, asserted in Count 2, are DISMISSED, without prejudice, for failure to state a claim upon which relief can be granted.

3. The Motion to Dismiss is DENIED as to Plaintiffs' Count 3 FDCPA claim, based on Rushmore's conduct occurring in July, 2018. The Motion to Dismiss is GRANTED as to Plaintiffs' Count 3 FDCPA claims, which are premised upon alleged conduct occurring outside the one-year statute of limitations.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to file an amended complaint consistent with this Opinion no later than <u>May 10, 2019</u>. Defendants shall file an answer or response within 14 days of the filing of an amended complaint. If no amended complaint is filed by May 10, 2019, Defendants shall file an answer to the remaining claim in the original Complaint by May 24, 2019.

**IT IS SO ORDERED:**

Dated: April 24, 2019

Marilyn J. Horan
United States District Judge