IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. OWENS and DONNA OWENS, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 18-1421 |
| | ) | |
| v. | ) | Judge Marilyn J. Horan |
| | ) | |
| JP MORGAN CHASE BANK and | ) | |
| RUSHMORE LOAN MANAGEMENT | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

Plaintiffs Thomas E. and Donna Owens filed the present suit on October 11, 2018 in the

Court of Common Pleas of Westmoreland County, Pennsylvania.  (ECF No. 1-3).  Plaintiffs

brought three claims: in Count 1, a breach of contract claim against Defendant JP Morgan Chase

Bank; in Count 2, a claim under Act 6 (also known as the Loan Interest and Protection Law or

LIPL, found at 41 Pa. Stat. §§ 101–605) against Defendant JP Morgan Chase Bank; and, in

Count 3, a claim under the Fair Debt Collection Practices Act (or FDCPA, found at 15 U.S.C.

§§ 1692–1692p) against Defendant Rushmore Loan Management Services, LLC.  Defendants

subsequently removed the matter to federal court and then moved to dismiss the Complaint in its

entirety.  (ECF Nos. 1, 2).  This Court dismissed Count 1 with prejudice; dismissed Count 2

without prejudice; and dismissed Count 3 in part and without prejudice as it related to conduct

outside the FDCPA's one-year statute of limitations.  (ECF No. 10).  Plaintiffs were given leave

to amend Counts 2 and 3, but chose not to do so.  As a result, Defendant JP Morgan Chase Bank

is no longer a party to this matter, and the only claim that remains is Plaintiffs' FDCPA claim

against Defendant Rushmore Loan Management Services regarding conduct occurring on or after October 11, 2017.

Following the completion of discovery, Defendant Rushmore Loan Management Services moved for summary judgment.  (ECF No. 35).  The parties briefed the issues, (ECF Nos. 35, 39, 42), and provided statements of facts and appendices, (ECF Nos. 35, 38, 40, 41).  The Motion is now ripe for decision.

For the following reasons, Defendant Rushmore Loan Management Services' Motion for Summary Judgment will be denied in part and granted in part.

## I. Background

Mr. and Mrs. Owens own a property in Trafford, Pennsylvania, which they used in 1996 as partial security for a mortgage loan.  (ECF No. 35, at 3).  The mortgage, issued by One Stop Mortgage, Inc., listed the principal amount as $53,000.  *Id.*; (ECF No. 35-2, at 2).  Mr. and Mrs. Owens also executed a note by which they agreed to repay the mortgage loan in monthly installments over thirty years.  (ECF No. 35, at 4).  The note also stated that the principal amount was $53,000.  (ECF No. 35-2, at 14).  A Truth-In-Lending Disclosure Statement, completed in conjunction with the mortgage and note, listed the "amount financed" as $49,165.45.  (ECF No. 40-20, at 28).

Several provisions of the mortgage and note are relevant here.  First, Paragraph 7 of the mortgage provides that if the Owens fail in their obligations under the mortgage and note, "then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property."  (ECF No. 35-2, at 6).  Permissible actions by Lender "may include paying reasonable attorney's fees and entering on the Property to make repairs."  *Id.*  The mortgage further states that "[a]ny amounts disbursed by Lender under this paragraph 7 shall

become additional debt of Borrower secured by this Security Instrument." *Id.*  Second, and much like the lender's right to enter to make repairs, paragraph 9 also allows the lender "or its agent" to "make reasonable entries upon and inspections of the Property." *Id.* at 7.  The mortgage requires only that the lender give the Owens "notice at the time of or prior to an inspection specifying reasonable cause for the inspection." *Id.*

Next, paragraph 14 of the mortgage provides that if the lender issues a notice to Mr. and Mrs. Owens, the notice must be either delivered to the property address or mailed by first class mail to the property address, unless applicable law requires otherwise. *Id.*  And lastly, in addition to several other provisions which expressly address specific charges and fees, paragraph 35 provides generally,

> To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which Lender may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument . . . .

*Id.* at 10.

Sometime later, JP Morgan Chase Bank acquired the mortgage and note.  (ECF No. 35, at 4).  In March 2016, Rushmore Loan Management Services took over service obligations on the mortgage loan.  *Id.* at 5.  At the time Rushmore began servicing Mr. and Mrs. Owens' mortgage and note, Rushmore considered the Owens to be in default.  (ECF No. 38, at 5).  According to Rushmore, the Owens stopped making mortgage payments in October 2014 and "have not paid their real estate taxes or hazard insurance for many years, forcing the lender to pay those costs." (ECF No. 35, at 4).  Mr. and Mrs. Owens disagree with Rushmore's characterization that they stopped making mortgage payments, stating instead that Rushmore's predecessors "continually refused to accept payments offered and continued to maintain unlawful charges against the loan, including attorney's fees." (ECF No. 38, at 2).  Mr. and Mrs. Owens have been involved in state

court litigation against Rushmore's predecessor servicer since before Rushmore took over servicing the mortgage loan.  *Id.* at 4.  Mr. and Mrs. Owens also deny that they stopped making tax and insurance payments, stating that they were up to date on those payments when Rushmore, "without need and on its own initiative, established an escrow account to make" those payments.  *Id.* at 2.

After Rushmore began servicing the Owens' mortgage loan and note, Rushmore hired Safeguard Properties "to conduct monthly inspections of the Property to determine whether the Property was occupied, required repairs and was secure."  (ECF No. 35, at 5).  During these inspections, Safeguard "placed a handful of door hangers on an exterior door of the Property." *Id.*  The door hangers consisted of a yellow envelope that said "attention," but did not have identifying information on the exterior.  *Id.*; (ECF No. 38, at 3–4).  Mr. and Mrs. Owens allege that they took the yellow color "as a warning," and that the door hangers were visible to people walking past their home.  (ECF No. 38, at 4).  The Owens further state that Safeguard often taped or placed the door hangers on the Owens' door at night or early in the morning.  *Id.*

In Mr. and Mrs. Owens' remaining claim, they allege that Rushmore violated the FDCPA by falsely representing the character and amount of the Owens' debt; by trespassing on their property to place door hangers; and by using door hangers to communicate with the Owens. Rushmore now seeks summary judgment in its favor on each of these issues.

## II. Legal standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury

could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted).  Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit.  *Id.*

In reviewing and evaluating the evidence for a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted).  However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law.  *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## III. Discussion

As an initial matter, before the Court delves into the substance of the parties' arguments, the Court must address some issues with the quality of the parties' briefs and supporting materials that will, in turn, affect the depth and detail of the Court's Opinion.  The parties' factual averments and legal arguments are largely disorganized and disjointed, and in some places, incomplete.  The parties are like two ships passing in the night: Rushmore does not clearly address each portion of Mr. and Mrs. Owens' FDCPA claim, despite seeking summary judgment as to the entire claim, and Mr. and Mrs. Owens fail to address all of Rushmore's arguments in their response.  And, in certain portions of Rushmore's brief, Rushmore quotes caselaw at length, but does not explain to the Court how that law applies to the facts in this case. In certain portions of the Owens' response, on the other hand, the Owens cite little to no law, seemingly expecting the Court to figure out which law should control.  What's more, both sides

fail in several places to adequately cite to their appendices and exhibits.  The Court will neither

make the parties' arguments for them, nor comb through the 600-plus pages of exhibits in search

of factual support for the parties' propositions.

With that in mind, the Court now turns to the substance of Rushmore's Motion for

Summary Judgment and the Owens' response thereto.  In the remaining claim of Mr. and Mrs.

Owens' Complaint, subject to the one-year statute of limitations, Mr. and Mrs. Owens allege that

Rushmore violated the FDCPA by:

     i.  falsely representing the character and amount of the debt by incorporating the disputed tax and insurance payments;

    ii.  falsely representing the character and amount of the debt by charging interest on the debt at a rate that is usurious and above the rate permitted by Pennsylvania's Act 6;

   iii.  falsely representing the character and amount of the debt by incorporating attorneys' fees that are not chargeable or collectable under the mortgage documents;

   iv.  falsely representing the character and amount of the debt by incorporating attorneys' fees related to a prior lawsuit that are not chargeable or collectable under Act 6;

    v.  falsely representing the character and amount of the debt by creating the implication that attorneys' fees related to a prior lawsuit were payable by the Owens when under the terms of a settlement agreement between the Owens and another party, the fees were not collectable;

   vi.  falsely representing the character and amount of the debt by unreasonably imposing charges for inspecting the property;

  vii.  using criminal trespass to repeatedly hang door hangers on the Owens' door, requesting that the Owens contact Rushmore, when Rushmore knew or had reason to know the debt was disputed and that the Owens were represented by counsel; and

 viii.  communicating with the Owens through the use of door hangers.

(ECF No. 1-3, at ¶ 61).  Mr. and Mrs. Owens do not cite any specific provisions of the FDCPA

in their Complaint.  Rushmore, guessing that § 1692d and § 1692e of the FDCPA apply, raises

five general arguments in support of its Motion for Summary Judgment.  First, Rushmore argues that the contested charges and fees are authorized by the mortgage and note.  (ECF No. 35, at 1, 12).  Second, Rushmore argues that, to the extent that the contested attorneys' fees imposed on the Owens by Rushmore's predecessor were improper, it "did not have a duty to investigate the debts it was trying to collect."  *Id.* at 15.  Next, Rushmore argues that Act 6 does not apply to Mr. and Mrs. Owens' mortgage.  *Id.* at 1, 16.  Fourth, Rushmore contends that the door hangers did not violate the FDCPA, either in placement or form.  *Id.* at 1, 19.  And lastly, Rushmore contends that the Owens' failure to present expert testimony bars their claim.  *Id.* at 1, 21.  In response, Mr. and Mrs. Owens cite § 1692e(2)(B)—even though several of their allegations mirror the language of § 1692e(2)(A)—and § 1692f.  (ECF No. 39, at 3, 15).

Based on the parties' arguments, the allegedly unlawful conduct can be divided into two broad categories: false representations in violation of §1692e and unlawful use of door hangers. The Court will address each allegedly unlawful act and the related arguments in turn.

A. False representations regarding the character and amount of debt

Congress enacted the FDCPA in an effort "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  To that end, § 1692e prohibits, among other things, "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  15 U.S.C. § 1692e(2).  Generally, the FDCPA is "characterized as a 'strict liability' statute because 'it imposes liability without proof of an intentional violation.'"  *Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012) (quoting *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 & n.7 (3d Cir. 2011)).  As such, § 1692e(2) "creates a straightforward, objective standard," and does not "suggest[] that an allowance is to be made for a defendant's

lack of knowledge or intent." *Id.* In that vein, however, § 1692k(c) of the FDCPA provides an affirmative defense for debt collectors. If a debt collector establishes, by a preponderance of the evidence, that the violation at issue (1) was unintentional, (2) was the result of a bona fide error, and (3) occurred despite "the maintenance of procedures reasonably adapted to avoid any such error," then the debt collector will not be liable under the FDCPA. 15 U.S.C. § 1692k(c). In short, a debtor is not required to establish the debt collector's knowledge or intent, but a debt collector who claims its violation was unintentional bears the burden of so proving in accordance with the standard set out in § 1692k(c).

Additionally, in the FDCPA context, representations from debt collector to debtor are analyzed under the objective "least sophisticated debtor" standard. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014). This standard is lower than the standard for a reasonable debtor, in that "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (internal quotations omitted). Even so, the "least sophisticated debtor" standard "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care" in order that it may protect debt collectors from "liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* (internal quotations omitted).

Mr. and Mrs. Owens allege that Rushmore falsely represented the character and amount of their debt in violation of § 1692e(2) of the FDCPA by incorporating tax and insurance payments into the Owens' debt; charging interest in excess of the limit set by Act 6; incorporating attorneys' fees into the Owens' debt that are not authorized by the mortgage

agreement and that violate Act 6; implying that attorneys' fees from a prior lawsuit were payable in contradiction to a settlement agreement; and charging fees for property inspections.

### i. Incorporating the tax and insurance payments into the Owens' debt

Mr. and Mrs. Owens first allege that Rushmore violated the FDCPA by falsely representing the character and amount of their debt through the inclusion of tax and insurance payments in the Owens' debt. In Rushmore's Concise Statement of Material Facts, Rushmore states that Mr. and Mrs. Owens "have not paid their real estate taxes or hazard insurance for many years, forcing the lender to pay those costs." (ECF No. 35, at 4). In Rushmore's Brief in Support of the Motion for Summary Judgment, Rushmore does not discuss this issue directly, but argues generally that any charges the Owens challenge are expressly authorized by the terms of the mortgage agreement and note. *Id.* at 14. Rushmore quotes paragraph 35 of the mortgage agreement, which provides,

> To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which Lender may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument . . . .

(ECF No. 35, at 14). Rushmore then concludes, without further discussion or analysis, that "the imposition of costs, fees and expenses incurred by the lender, such as inspection costs and attorney's fees, does not constitute a false representation or unconscionable collection activities under the FDCPA." *Id.* Rushmore neither mentions the tax and insurance payments nor explains why adding the tax and insurance payments to the Owens' debt was authorized by the mortgage agreement. Rushmore also ignores other provisions of the mortgage agreement that

are specific to tax and insurance payments.[1]  Rushmore instead appears to suggest that paragraph 35 of the mortgage agreement is a carte blanche that allows Rushmore to assign costs to the Owens, regardless of other, more specific provisions of the agreement.

Mr. and Mrs. Owens respond only by disputing Rushmore's fact statement.  In their responsive Concise Statement of Material Facts, the Owens state that they[2] "were making payments on insurance and taxes, but Defendant, without need and on its own initiative, established an escrow account to make payments on the same despite Plaintiffs being up to date on such payments."  (ECF No. 38, at 2).  Mr. and Mrs. Owens do not mention, nor do they offer any argument on, this point in their Brief in Opposition.

Because Rushmore does not specifically address the issue of tax and insurance payments in its argument, and because there appears to be a factual dispute regarding said payments, Rushmore has not established that it is entitled to summary judgment on this issue.

### ii. Charging interest that exceeds the rate permitted by Act 6

Second, Mr. and Mrs. Owens allege that Rushmore falsely represented the character and amount of their debt through charging interest in excess of the rate permitted by Pennsylvania's Act 6.  Rushmore raises three arguments in support of its Motion as to this issue: (1) Act 6 does not apply; (2) even if Act 6 does apply, an alleged violation of Act 6 is not a per se violation of

---

[1] Paragraph 2 of the mortgage agreement addresses, in detail, "Funds for Taxes and Insurance." (ECF No. 35-2, at 4).  Depending on the resolution of certain factual disputes, it appears to the Court that paragraph 2 likely authorized Rushmore to pay the taxes and insurance and then add those costs to the Owens' debt.  But Rushmore does not raise or discuss paragraph 2, so the Court will neither analyze paragraph 2 further nor decide the issue of tax and insurance payments on the basis of paragraph 2 at this time.

[2] Mr. and Mrs. Owens' responsive Concise Statement of Facts actually says, "*Defendants* were making payments on insurance and taxes . . . ."  The Court assumes, based on context clues, that this is a typographical error, and that the Owens meant "Plaintiffs."

the FDCPA; and (3) the Court previously dismissed the Owens' Act 6 claim against the other defendant in this matter.  (ECF No. 35, at 18; ECF No. 42, at 4).

a. Applicability of Act 6

Act 6 applies to various types of consumer loans, including "residential mortgages."  41 Pa. Stat. § 101.  A "residential mortgage," as defined by the Act, is "an obligation to pay a sum of money in an original bona fide principal amount of [$50,000][3] or less, evidenced by a security document . . . ."  *Id.*  The Act establishes a maximum interest rate for residential mortgages, as well as places limitations on certain charges and fees that lenders and debt collectors may impose, 41 Pa. Stat. §§ 301, 405, 406.

Here, the mortgage and note both state that the principal amount of the Owens' loan was $53,000.  (ECF No. 35-2, at 2, 14).  Rushmore argues that the Owens' mortgage is not a "residential mortgage" within the meaning of Act 6 because the principal was greater than $50,000.  (ECF No. 35, at 18).  Mr. and Mrs. Owens, however, argue that although the "face value" of the mortgage was $53,000, this amount is not the "bona fide principal amount."  (ECF No. 39, at 10).  According to Mr. and Mrs. Owens, the $53,000 included other fees and charges which must be subtracted in order to determine the "bona fide principal amount."  *Id.*  In support of their position, the Owens rely on two cases: *General Electric Credit Corp. v. Slawek*, 409 A.2d 420 (Pa. Super. Ct. 1979), the relevant portion of which Rushmore contends is unpersuasive dicta, and *In re Harris-Pena*, 446 B.R. 178 (Bankr. E.D. Pa. 2009), to which Rushmore does not respond at all in its Reply Brief.

---

[3] When the Owens' mortgage was executed in 1996, the threshold amount was $50,000.  (ECF No. 35, at 16; ECF No. 39, at 9).  In 2008, the threshold amount was replaced with a variable "base figure," which is currently greater than $260,000.  *Trunzo v. Citi Mortg.*, 43 F. Supp. 3d 517, 535 (W.D. Pa. 2014); 49 Pa. Bull. 6554 (November 2, 2019).

In *General Electric Credit Corp. v. Slawek*, the Pennsylvania Superior Court explained in a footnote that both the parties and the trial court assumed Act 6 applied to the matter, even though the promissory note "was in the sum of $65,849.78." *Slawek*, 409 A.2d at 422 n.5. The court noted that this amount "apparently included finance charges and other fees," such that the "bona fide principal amount" was less than $50,000. *Id.* Thirty years later, the Bankruptcy Court in the Eastern District of Pennsylvania analyzed the *Slawek* footnote in conjunction with relevant portions of Act 6's statutory scheme. *In re Harris-Pena*, 446 B.R. at 187–89. According to the Bankruptcy Court, the *Slawek* court recognized "[t]he proposition that the face amount of a note and the principal amount of the loan are not the same for purposes of Act 6." *Id.* at 187. The court also found that, based on the statutory definition of "finance charge," "there is a distinction in Act 6 between the following components of a loan: (i) the finance charge; (ii) settlement costs; and (iii) the principal of the loan." *Id.* Taking those two findings together, the court concluded that, for the purposes of Act 6, the bona fide principal amount "excludes finance charges and actual settlement costs." *Id.* at 188. The Bankruptcy Court went on to hold that, although the face value of the mortgage loan was $51,660, certain costs and fees must be excluded from that amount, resulting in a bona fide principal amount of $47,789.50. *Id.* at 188–89. The court further noted that a federal disclosure statement for the loan listed the "amount financed" as $47,859.90. *Id.* at 189 n.16.

The Bankruptcy Court for the Eastern District of Pennsylvania continues to find the reasoning of *In re Harris-Pena* persuasive, as noted in a 2018 opinion, *In re Faulkner*, 593 B.R. 263 (Bankr. E.D. Pa. 2018). In denying a motion to dismiss, the court stated that "the $53,900 principal amount on the face of the Mortgage likely includes title and broker fees, points and other charges which cannot be part of the bona fide principal for purposes of applying the

definition of 'residential mortgage.'"  *In re Faulkner*, 593 B.R. at 293 n.27.  The court thus

found that there was an issue of fact regarding whether the bona fide principal amount exceeded

the $50,000 threshold.  *Id.*

 This Court likewise finds the reasoning set out in *In re Harris-Pena* to be persuasive.

Applying that reasoning here, the "bona fide principal amount" of the Owens' mortgage, for the

purposes of Act 6, is not necessarily the same as the principal amount stated in the mortgage and

note.  Mr. and Mrs. Owens contend that there are finance charges and actual settlement costs that

must be subtracted, which, by their calculations, makes the bona fide principal amount

$48,280.25.  (ECF No. 39, at 12).  The Owens also provide a copy of the Truth-In-Lending

Disclosure Statement, which lists the "amount financed" as $49,165.45.  (ECF No. 40-20, at 28).

Mr. and Mrs. Owens have thus established a genuine dispute of material fact regarding the bona

fide principal amount of their mortgage loan, such that Act 6 may apply.

 b. Act 6 provides criteria for FDCPA liability

 Rushmore next argues that even if Act 6 applies, "an alleged violation of Act 6 does not

equate to a violation of the FDCPA."  (ECF No. 35, at 18).  Rushmore quotes several cases that

state this proposition, and then concludes, without explaining or applying the law to the facts of

this case, that "Plaintiffs' contention that Act 6 was violated has no bearing on Plaintiffs'

FDCPA claim against Defendant Rushmore and can provide no basis for recovery under the

FDCPA."  *Id.* at 19.  Not only is the content of Rushmore's argument lacking, but the Court finds

that Rushmore's argument misses the mark.  At issue in this FDCPA claim is not whether Act 6

was violated, that is, whether the Owens have a cause of action under Act 6.  The issue is

whether the Owens have a cause of action under the FDCPA, certain provisions of which allow

state law to set the criteria by which FDCPA liability may arise.  For example, § 1692f(1)

prohibits collecting or attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or *permitted by law*." 15 U.S.C. § 1692f(1) (emphasis added); *Allen v. LaSalle Bank*, 629 F.3d 364, 367 n.4 (3d Cir. 2011). Thus, for residential mortgages in Pennsylvania that have a bona fide principal amount less than $50,000, FDCPA liability arises when a debt collector collects or attempts to collect interest or fees that are not permitted by Act 6. Mr. and Mrs. Owens do not allege in their FDCPA claim that they have a cause of action under Act 6; rather, they allege that Rushmore charged them interest (and fees, discussed below) that were not permitted by Act 6. Therefore, Rushmore's argument that Act 6 has no bearing on the Owens' FDCPA claim fails.

c. Act 6 claim previously dismissed by the Court

In its Reply Brief, Rushmore raises an additional argument as to why Mr. and Mrs. Owens' Act 6-based FDCPA allegations must fail. According to Rushmore, it is entitled to summary judgment on the Act 6-based allegations because the Court previously dismissed the Owens' Act 6 claim against the other defendant in this matter, JP Morgan Chase Bank. (ECF No. 42, at 4). However, this Court dismissed the Act 6 claim against JP Morgan Chase Bank because an Act 6 claim requires a plaintiff to show that he has in fact paid the disputed amount to the defendant—which the Owens did not do. *Owens v. JP Morgan Chase Bank*, 2019 U.S. Dist. LEXIS 69663, at *16 (W.D. Pa. Apr. 24, 2019). In contrast, to establish a claim under the FDCPA, a plaintiff must only show that the defendant *attempted* to collect from the plaintiff. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015); *Allen*, 629 F.3d at 367 n.4. Consequently, Rushmore's argument on this point is unavailing.

14

Because the Court finds that there is a genuine dispute of material fact, such that Act 6 might apply to the Owens' mortgage, and because Rushmore's additional arguments regarding Act 6 as a basis for FDCPA liability both fail, Rushmore is not entitled to summary judgment on the allegation of charging interest that is usurious under Pennsylvania's Act 6.

### iii. Incorporating attorneys' fees into the debt in violation of the mortgage agreement

Mr. and Mrs. Owens next claim that Rushmore violated the FDCPA by seeking to collect attorneys' fees that were charged by Rushmore's predecessor in violation of the mortgage agreement.  The parties agree that the disputed attorneys' fees arose when Mr. and Mrs. Owens sued the previous loan servicer, and the previous loan servicer added its defense costs to the Owens debt.  (ECF No. 35, at 14; ECF No. 39, at 5).  Rushmore first contends that it is entitled to summary judgment on this allegation because the mortgage and note authorized Rushmore's predecessor to add attorneys' fees to Mr. and Mrs. Owens' debt.  (ECF No. 35, at 14).  Rushmore also argues that even if its predecessor was not permitted to add the fees to the Owens' debt, those fees were added to the debt before Rushmore took over servicing the mortgage, and Rushmore did not have a duty to investigate the contents of the debt.  *Id.* at 14–15.  Mr. and Mrs. Owens offer no response as to whether the mortgage agreement allowed their lender to incorporate the disputed attorneys' fees into their debt, and instead focus on Rushmore's duty to investigate.  (ECF No. 39, at 6).

a. Terms of mortgage agreement

As to whether the mortgage agreement permitted the incorporation of the disputed attorneys' fees, Rushmore relies on paragraph 35 of the mortgage agreement, but does so in a conclusory fashion.  (ECF No. 35, at 14).  As discussed above in relation to the tax and insurance payments, Rushmore seems to treat paragraph 35 in an overly broad manner, ignoring the fact

that there are other provisions in the mortgage agreement that specifically allocate various costs, fees, and charges.  Additionally, these attorneys' fees are the subject of litigation in another court, so this Court hesitates to weigh in on the permissibility of imposing these fees on the Owens at this time.  Because Rushmore's argument on this point is lacking, and because these fees are subject to litigation in another court, Rushmore's Motion will be denied as to this issue.

b. Duty to investigate

Next, Rushmore argues that even if the imposition of attorneys' fees by the predecessor loan servicer was improper, Rushmore is not liable to Mr. and Mrs. Owens because Rushmore did not have a duty to investigate the debt it was attempting to collect.  (ECF No. 35, at 14).  Mr. and Mrs. Owens agree that the FDCPA does not impose on a debt collector a duty to investigate the details of the debt it seeks to collect.  (ECF No. 39, at 6).  But the Owens contend that Rushmore's "argument is a re-flavoring of the bona fide error defense found in 15 U.S.C. § 1692k(c)," and that Rushmore has not met its burden for establishing this affirmative defense. *Id.*

The Third Circuit has not expressly addressed this issue, but the opinions of other circuit courts of appeals are instructive.  As the Seventh Circuit stated, "Courts do not impute to debt collectors other information that may be in creditors' files—for example, that [the] debt has been paid or was bogus to start with."  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004). The court explained that "[t]his is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims."  *Id.* (citing 15 U.S.C. § 1692g(b)). Further, the Ninth Circuit noted that "the FDCPA does not impose upon [the debt collector] any duty to investigate independently the claims presented by [the creditor]," and that "a debt collector may reasonably rely upon information provided by a creditor who has provided

accurate information in the past." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006) (internal quotations omitted).  However, the FDCPA does impose, with certain parameters, a duty to cease collection of a disputed debt until the debt collector verifies the debt.  15 U.S.C. § 1692g(b).  In other words, a debtor's dispute of a debt can trigger a debt collector's duty to investigate and verify the debt prior to continuing its debt collection activities.

Rushmore admits that Mr. and Mrs. Owens were in litigation with Rushmore's predecessor regarding the imposition of attorneys' fees at the time Rushmore took over servicing the Owens' mortgage.  (ECF No. 41, at 1).  Rushmore contends, however, that there is no evidence it knew about that pending litigation until the Owens filed the present lawsuit.  (ECF No. 35, at 14–15).  In response, Mr. and Mrs. Owens cite the deposition of Rushmore's corporate designee, Roberto Montoya.  (ECF No. 38, at 4).  Mr. Montoya testified that when Rushmore began servicing the Owens' mortgage loan, the prior loan servicer transferred over all of its business records to Rushmore.  (ECF No. 40-16, at 49).  He also testified that business records transferred to Rushmore typically include notification of any pending litigation.  (ECF  No. 40-18, 1–2).  But Mr. Montoya further testified that, despite what is typically included in a transfer of business records, he did not know if a notification regarding the Owens' pending litigation was provided to Rushmore at the time of transfer.  *Id.* at 2.

Viewing the facts in the light most favorable to Mr. and Mrs. Owens, they have established a genuine issue of material fact regarding whether Rushmore knew that the attorneys' fees imposed on the Owens by Rushmore's predecessor were in dispute.  Rushmore thus may have had a duty to cease collection efforts in relation to the disputed attorneys' fees until it investigated and verified that portion of the Owens' debt.  Therefore, Rushmore is not entitled to summary judgment on this issue.

*iv. Incorporating attorneys' fees into the debt in violation of Act 6*

In addition to alleging that the attorneys' fees were improper under the mortgage agreement, the Owens allege that the attorneys' fees were unlawful under Act 6.  Rushmore's arguments about the applicability of Act 6, discussed above, covered this allegation as well.  The Court has already determined that there is a question of fact regarding the bona fide principal amount of the Owens' debt, such that Act 6 might apply.  Accordingly, Rushmore's Motion for Summary Judgment will be denied as to the issue of whether Rushmore violated the FDCPA by attempting to collect attorneys' fees in violation of Act 6.

*v. Implying that attorneys' fees were payable despite settlement agreemen*t

Mr. and Mrs. Owens further allege, in relation to the attorneys' fees, that Rushmore violated the FDCPA "[i]n creating the implication that attorneys['] fees related to the prior lawsuit were payable by the Plaintiffs when under the terms of the parties['] settlements agreements they were not collectable."  (ECF No. 1-3, at ¶ 61).  Neither Rushmore nor the Owens address this allegation.  Thus, to the extent that Rushmore seeks summary judgment on this issue, and to the extent that the conduct occurred within the one-year statute of limitations, Rushmore's motion will be denied.

*vi. Imposing inspection charges*

Mr. and Mrs. Owens lastly argue that Rushmore falsely represented the character and amount of their debt by charging them fees for inspecting the property.  It is undisputed that Rushmore retained another company, Safeguard, to conduct regular inspections of the Owens' property.  (ECF No. 35, at 5; ECF No. 38, at 2–3).  It is also undisputed that Rushmore charged the Owens a fee of $16.50 each time Safeguard went to the Owens' home and placed a door

hanger on the Owens' door.  (ECF No. 38, at 5; ECF No. 41, at 2).  The parties do not say so

clearly, but it appears to the Court that the $16.50 charges are, at least in large part, the

inspection costs at issue.  The Court bases this on the fact that Safeguard was hired to perform

property inspections and there was a charge associated with each of Safeguard's visits.

As noted above in the Court's discussion of tax and insurance payments and attorneys'

fees, Rushmore relies on paragraph 35 of the mortgage agreement to support its contention that it

was authorized to impose the inspection costs on the Owens, although it does so in a conclusory

manner.  (ECF No. 35, at 14).  Mr. and Mrs. Owens respond by arguing that "[t]he mortgage

only allows for costs if the costs were incurred due to a permitted act," and that Rushmore's

inspections were not permitted acts.  (ECF No. 39, at 5).  Mr. and Mrs. Owens cite to paragraph

7 of the mortgage agreement, but that paragraph does not support their contention.[4]  Rather, the

supporting provision seems to be paragraph 35, as it allows the lender to be reimbursed for costs

incurred "in the performance of any acted required or permitted hereunder or by law."  (ECF No.

35-2, at 10).  Mr. and Mrs. Owens next cite to paragraph 9 of the mortgage agreement, which

allows Rushmore or its agent to "make reasonable entries upon and inspections of the Property"

so long as Rushmore gives the Owens "notice at the time of or prior to" the inspection.  (ECF

No. 39, at 5; ECF No. 35-2, at 7).  The Owens argue that the property inspections were not

permitted acts because "notice of the property inspections was not given to the Plaintiffs before

the inspections occurred."  (ECF No. 39, at 5).

On its very face, Mr. and Mrs. Owens' argument fails.  The Owens correctly explain the

notice requirement—that Rushmore must provide notice of the inspection before *or at the time of*

---

[4] Paragraph 7 states, "If Borrower fails to perform the covenants and agreements contained in
this Security Instrument, . . . then Lender may do and pay for whatever is necessary to protect the
value of the Property and Lender's rights in the Property."  (ECF No. 35-2, at 6).

the inspection—but then they argue that Rushmore was required to give notice beforehand. Mr. and Mrs. Owens do not offer any evidence or argument that Rushmore did not give notice at the time of the inspections. To the contrary, the fact that Safeguard left a door hanger each time it visited shows that the Owens received notice of Safeguard's inspection at the time the inspection occurred, in compliance with the mortgage agreement.

Mr. and Mrs. Owens do not offer any other evidence or arguments as to why Rushmore's imposition of inspection costs constitutes false representations of the Owens' debt. Instead, Mr. and Mrs. Owens argue that Rushmore was not entitled to "charge $16.50 every time [Safeguard] would do a property inspection and leave a door hanger" because doing so was "abusive."[5] (ECF No. 39, at 14). The Owens do not cite any law, nor do they point to any terms of the mortgage to support their contention. Rather, they argue only that $16.50 is an abusive amount because it is greater than the cost to mail a letter. *Id.* at 14–15. Mr. and Mrs. Owens thus argue that Rushmore should have mailed them a letter rather than leaving door hangers. *Id.* But the Owens seem to ignore their own statement of fact that the $16.50 charges covered the door hangers *and* the property inspections. *Id.* at 14.

In sum, although Rushmore offers only a conclusory argument on the issue of inspection costs, Mr. and Mrs. Owens do not establish a genuine issue of material fact regarding the nature of the inspection costs. Additionally, Mr. and Mrs. Owens' arguments regarding the misrepresentative or abusive nature of the inspection costs are unavailing. Rushmore is therefore entitled to summary judgment on the issue of inspection costs.

---

[5] In fact, Mr. and Mrs. Owens call the $16.50 charge "the most abusive part of using door hangers"—more abusive than trespassing on the Owens' property or "sneaking" around the property at night or early in the morning. (ECF No. 39, at 2, 14).

B. Door hangers

In addition to alleging that Rushmore made false representations, Mr. and Mrs. Owens allege in their Complaint that Rushmore violated the FDCPA by entering the Owens' property to place door hangers on the Owens' front door, despite knowing that the debt was in dispute and that the Owens were represented by counsel, and by communicating with the Owens through door hangers. As noted earlier, Mr. and Mrs. Owens do not cite to any specific provisions of the FDCPA in their Complaint. In Rushmore's Motion for Summary Judgment, Rushmore first argues that the door hangers do not violate § 1692e of the FDCPA because nothing in the contents of the door hangers was misleading. (ECF No. 35, at 19). Mr. and Mrs. Owens do not respond to this argument. Rushmore also argues that the placement of the door hangers was not harassing, oppressive, or abusive in violation of § 1692d. *Id.* Although the Owens never mention § 1692d in their response to the Motion, this seems to be the main provision on which they base their claim regarding the door hangers. (ECF No. 39, at 12–15). Mr. and Mrs. Owens also cite § 1692f, arguing that Rushmore failed to protect their privacy in relation to their debt. *Id.* at 15.

   *i. Section 1692d*

Section 1692d of the FDCPA proscribes "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Several district courts within the Third Circuit "have opined that § 1692d 'prohibits only oppressive and outrageous conduct.'" *Davis v. Phelan Hallinan & Diamond, P.C.*, 2016 U.S. Dist. LEXIS 35431, at *18 (D.N.J. Mar. 18, 2016) (quoting *Christy v. EOS CCA*, 905 F. Supp. 2d 648, 654 (E.D. Pa. 2012) and citing *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 394 (D. Del. 1991)). Whether the conduct at issue harassed, oppressed, or abused the debtor is

generally a question for the jury.  *Regan v. Law Offices of Edwin A. Abrahamsen & Assocs.*,
2009 U.S. Dist. LEXIS 112046, at *18 (E.D. Pa. Dec. 1, 2009).  Nonetheless, "summary
judgment may be appropriate where the specific conduct at issue unequivocally has—or does not
have—the natural consequence of harassing, oppressing, or abusing the debtor as a matter of
law."  *Id.* at *19.  The Owens assert several reasons why the door hangers were abusive, namely
that Rushmore trespassed on their property, that Rushmore was attempting to bypass their
attorney, and that the door hangers were yellow like a municipal lien notice.

First, Mr. and Mrs. Owens allege that Rushmore, through its agent, Safeguard, trespassed
on their property to place the door hangers on their front door at night or early in the morning.
(ECF No. 1-3, at ¶ 61; ECF No. 38, at 4; ECF No. 39, at 14).  Rushmore points to three
paragraphs in the mortgage agreement by which the Owens give Rushmore permission to enter
their property, two of which the Court finds most relevant.  Paragraph 9 provides, "Lender or its
agent may make reasonable entries upon and inspections of the Property."  (ECF No. 35-2, at 7).
Paragraph 14 requires Rushmore to provide notices to the Owens "by delivering it or by mailing
it by first class mail" to the Owens' home.  *Id.*

In response, Mr. and Mrs. Owens argue that the mortgage "only allowed for reasonable
inspections after notice provided, and did not provide a free-wheeling right to enter the
Plaintiffs['] property at any time, and for any reason."  (ECF No. 39, at 14).  This argument is
unavailing for several reasons.  First, and as discussed above in relation to inspection fees, the
mortgage did not require prior notice only, but also allowed for notice at the time of inspection.
Second, the mortgage may not provide a "free-wheeling right to enter," but it does allow
Rushmore to "make reasonable entries upon and inspections."  Considering that Rushmore hired
Safeguard to conduct inspections, it seems that Safeguard's entries on the property were in

relation to that purpose and the Owens offer no evidence to the contrary.  Third, the mortgage agreement also allows Rushmore to give notices to the Owens by delivering them to the Owens' home.  Delivery, in contrast to mail, assumes some level of entry to the property.  And lastly, courts have recognized that visitors generally have an implicit license to approach a home's front door.  *Florida v. Jardines*, 569 U.S. 1, 8 (2013).  The door hangers at issue here were placed on Mr. and Mrs. Owens' front door, not a back door or other part of the property that might involve greater intrusion.  Mr. and Mrs. Owens do not offer any evidence that Safeguard entered any other part of the property, approached or loitered at the front door after being asked to leave, or did anything other than simply leave a note on the Owens' door.

Relatedly, the Owens argue that "they actually felt threatened and embarrassed" because "these door hangers were placed at different times during the night and early morning."  (ECF No. 39, at 14).  The Owens offer no evidence that Safeguard did anything to disturb them while leaving the door hangers.  In fact, the Owens seem to take issue with the fact that Safeguard did not announce its presence at the front door by knocking or ringing the doorbell.  *Id.* at 2.  But, under the facts of this case, the Court finds as a matter of law that the specific conduct at issue does not have the natural consequence of harassing, oppressing, or abusing the Owens.  Safeguard not only had an implicit license to approach the front door, but, under the mortgage agreement, Safeguard also had the Owens' permission to enter the property to conduct inspections and a duty to leave a notice at the time of inspection.  Safeguard also only left "a handful" of door hangers, spread out over several months.  Moreover, Safeguard's quiet delivery of notices is not much different from mail or package delivery to the Owens' front porch.  Thus, to the extent Mr. and Mrs. Owens "actually felt threatened and embarrassed" by the manner in which the door hangers were placed, such is not a "natural consequence" of Safeguard's conduct

here.  Rushmore is therefore entitled to summary judgment on the issue of whether door hangers were placed in a manner that harassed or abused Mr. and Mrs. Owens.

Next, the Owens argue that communicating with them via door hanger, despite Rushmore's knowledge that they were represented by counsel, was "an underhanded and sneaky way to attempt [to] bypass the Plaintiffs' litigation counsel to resolve the ongoing lawsuit, or in the alternative[,] an attempt to pressure the Plaintiffs into abandoning the same."  (ECF No. 39, at 14).  The Owens offer no further analysis and no citations to the FDCPA or relevant case law to support their position that the door hangers—which appear to be inspection notices required by the mortgage agreement—were "underhanded and sneaky," and therefore harassing or abusive, in violation of the FDCPA.  Consequently, this argument fails.

Lastly, Mr. and Mrs. Owens speculate that the yellow color of the door hangers "could lead an onlooker to believe the Plaintiffs had defaulted on some municipal payment," and as a result, they contend that the yellow color was abusive.  *Id.*  Again, Mr. and Mrs. Owens offer no law in support of their position, nor any analysis or discussion that might demonstrate how onlookers' potential assumptions regarding the color of the door hangers constituted harassment or abuse.  The Owens' argument regarding the color of the door hangers thus fails.

### ii. Section 1692f

Turning, finally, to the Owens' privacy concerns, Section 1692f of the FDCPA prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including the use of post cards to communicate about a debt and the use of debt-related language on envelopes.  15 U.S.C. §1692f.  As the Third Circuit has noted, § 1692f "evinces Congress's intent to screen from public view information pertinent to the debt collection."  *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014).

24

Mr. and Mrs. Owens contend that the absence of their names on the outer envelope is problematic because "anyone who comes to Mr. and Mrs. Owens' house including their daughter, grandchildren, or dog walker would be tempted to open the document and thereby learn Mr. and Mrs. Owens' financial business."  (ECF No. 39, at 15).  This argument, like many others put forward by the parties in this matter, is unavailing.  The Owens essentially ask the Court to find that a passerby or visitor would understand that an envelope on the Owens' front door was intended for anyone to open and read.  The Court is unconvinced and will not find Rushmore liable for the nosiness of others.

In summary, Rushmore has shown that the door hangers were permitted by the mortgage agreement.  Mr. and Mrs. Owens failed to establish a genuine dispute of material fact or otherwise raise pertinent arguments that might undermine Rushmore's showing.  Consequently, Rushmore's Motion will be granted as to the issues related to door hangers.

C. Expert testimony not required

Lastly, Rushmore seeks summary judgment on the ground that Mr. and Mrs. Owens failed to produce expert testimony regarding "(1) whether the interest, property preservation costs and attorney's fees charged to Plaintiffs' loan account were excessive or unreasonable; and (2) whether the placement of door hangers was unreasonable or violated industry standard practice."  (ECF No. 35, at 21).  As Mr. and Mrs. Owens point out in their response, Rushmore does not cite any law in support of its proposition, "nor does it state why questions of reasonableness are so beyond the domain of the layperson that an expert is needed."  (ECF No. 39, at 15–16).  Mr. and Mrs. Owens also point out that FDCPA claims are reviewed under the least sophisticated debtor standard.  *Id.* at 16.  Lastly, the Owens state that they are not arguing that the fees, costs, and charges at issue in this matter are unreasonable; rather, they contend that

the fees, costs, and charges are unlawful "and thus could not be charged no matter how reasonable or unreasonable they are." *Id.* Rushmore does not respond to any of these arguments in its Reply Brief.

In light of Mr. and Mrs. Owens' position that they do not argue the contested charges and fees were unreasonable, and because Rushmore has not adequately shown why expert testimony will be required, Rushmore's Motion will be denied as to this issue.

**IV. Conclusion**

THEREFORE, based on the foregoing, Defendant Rushmore Loan Management Services, LLC's Motion for Summary Judgment will be DENIED in part and GRANTED in part. The Motion will be DENIED as to the tax and insurance payments, usurious interest, attorneys' fees, and the issue regarding expert testimony. The Motion will be GRANTED as to the inspection fees and the door hangers. A separate order, pursuant to Federal Rule of Civil Procedure 58, will follow.

DATE April 16, 2020

Marilyn J. Horan
United States District Judge